UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRISTIAN M. CYR** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-1973** |
| **DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, ET AL.** | **SECTION: "P" (2)** |

**ORDER AND REASONS**

The Court, having considered the record, the applicable law, the Report and Recommendation of the United States Magistrate Judge (R. Doc. 65), Plaintiff's Objection to the Report and Recommendation (R. Doc. 70), and Defendants' Objection to the Report and Recommendation (R. Doc. 71), accepts in part and modifies in part the Magistrate Judge's recommended disposition, as set forth herein.

**I.    PROCEDURAL BACKGROUND**

Plaintiff, Christian M. Cyr, instituted this action against several defendants for conduct that occurred while Plaintiff was incarcerated at B.B. Rayburn Correctional Center ("Rayburn") in Louisiana.[1] Defendants are five correctional officers, with varying ranks and titles, who worked at Rayburn during the relevant period: Justin Rester, Jeremy Mizell, Henry McMurray, Johnathan Jones, and Jessica O'Keefe.[2] Plaintiff asserts four claims in his operative complaint. The first is a claim under 42 U.S.C. § 1983, brought against all defendants, for allegedly violating Plaintiff's right be free from cruel and unusual punishment and excessive force by correctional officers under the Eighth Amendment of the Constitution of the United States.[3] Plaintiff's other three claims arise under Louisiana state law. These are: a claim for battery against Defendants Rester, Mizell, and

---
[1] R. Doc. 39.
[2] *Id.* at 1–3.
[3] *Id.* at 10–12.

McMurray;[4] a claim for assault against Defendants Rester and Mizell;[5] and a claim for intentional infliction of emotional distress against Defendants Rester, Mizell, Jones, and O'Keefe.[6]

Defendants filed a motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[7] Defendants also moved to strike the affidavit attached to Plaintiff's operative complaint pursuant to Federal Rules of Civil Procedure 12(f) and 10(c).[8] Plaintiff opposed both motions filed by Defendants.[9] Defendants then filed a motion to strike impertinent and scandalous claims contained in Plaintiff's oppositions pursuant to Federal Rule of Civil Procedure 12(f).[10] The Court referred the three motions filed by Defendants to the United States Magistrate Judge for report and recommendations.[11]

The Magistrate Judge issued her Report and Recommendation shortly thereafter. For the reasons stated in the report, the Magistrate Judge recommended that "Defendants' Motion to Strike Affidavit Attached to Amended Complaint and Defendants' Motion to Strike Impertinent and Scandalous Claims in Plaintiff's Oppositions be DENIED," and that "Defendants' Motion to Dismiss be GRANTED IN PART AND DENIED IN PART, dismissing the § 1983 claims against Defendants Rester, Mizell, Jones and O'Keefe based on verbal threats, dismissing the § 1983 claim against Defendant McMurray, and dismissing the intentional infliction of emotional distress claims, but denying the motion as to the § 1983 excessive force claims against Defendants Rester and Mizell."[12] Plaintiff and Defendants filed objections to the Report and Recommendation.[13]

---

[4] *Id.* at 12–13.
[5] *Id.* at 14–15.
[6] *Id.* at 15–16.
[7] R. Doc. 43.
[8] R. Doc. 44.
[9] R. Docs. 49, 52.
[10] R. Doc. 56.
[11] R. Doc. 64.
[12] R. Doc. 65 at 1.
[13] R. Docs. 70, 71.

## II.  LAW AND ANALYSIS

Plaintiff objects to each of the Magistrate Judge's recommendations that certain of his claims should be dismissed. Defendants do not specifically object to any of the findings by the Magistrate Judge, but they request that the Court clarify and, to the extent necessary, modify the Magistrate Judge's recommended dispositions as to Defendant McMurray and Defendants Jones and O'Keefe.

The Federal Rules of Civil Procedure require that the district judge "determine de novo any part of the magistrate judge's disposition that has been properly objected to."[14] After reviewing a report and recommendation, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."[15]

### A. Objections related to recommendation that the Court dismiss Plaintiff's § 1983 claims against Defendants Rester, Mizell, Jones and O'Keefe based on verbal threats.

The Court first turns to the Magistrate Judge's recommendation that the Court dismiss Plaintiff's § 1983 claims against Defendants Rester, Mizell, Jones and O'Keefe based on verbal threats. Plaintiff does not take issue with the Magistrate Judge's conclusion that verbal threats alone do not amount to constitutional violations and thus are insufficient to state a plausible § 1983 claim, but Plaintiff argues that his claims should not be dismissed because he "does not allege mere verbal threats."[16] Plaintiff contends that his complaint outlines several weeks of threats of great bodily harm towards him by Defendants Rester, Mizell, Jones, and O'Keefe, and that

---

[14] FED. R. CIV. P. 72(b)(3).
[15] *Id.*
[16] R. Doc. 70-1 at 5.

3

eventually this great bodily harm did occur when he was brutally attacked by Defendants Rester and Mizell.[17]

Plaintiff's argument rests on a misunderstanding of the law. That Defendants Mizell and Rester ultimately followed through on their verbal threats does not change the fact that the threats themselves did not amount to constitutional violations.[18] As the Magistrate Judge correctly recognized, Plaintiff has plausibly alleged a constitutional violation, in the form of an excessive force claim, based on the allegations that Defendants Rester and Mizell physically attacked Plaintiff without provocation and continued to do so even after restraining Plaintiff on the ground, causing severe injuries to Plaintiff, including broken teeth and damage to his ankles, legs, jaw, face, and neck.[19] In this case, it is the physical attack of Plaintiff that amounts to a constitutional violation and gives rise to a § 1983 claim; the verbal threats do not.[20] Accordingly, Plaintiff's § 1983 claims against Defendants Rester, Mizell, Jones and O'Keefe based on the verbal threats made by these defendants must be dismissed.

Plaintiff separately argues that "[e]ven if verbal threats alone are insufficient under § 1983, dismissal is improper because [Plaintiff] also pleads a valid state-law assault claim."[21] Plaintiff appears to be under the mistaken belief that the Magistrate Judge's recommendation would result

---

[17] *Id.*
[18] *See, e.g.*, *Robertson v. Plano City of Tex.*, 70 F.3d 21, 24 (5th Cir. 1995) ("In the Eighth Amendment context, our circuit has recognized as a general rule that mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." (citation modified)); *Rader v. Lubbock Cnty.*, No. 01-258, 2003 WL 21145788, at *13 (N.D. Tex. Apr. 25, 2003) (dismissing prisoner's claim that defendant verbally taunted and threatened him because mere threats do not rise to the level of a constitutional violation).
[19] *See* R. Doc. 39 at ¶¶ 13–17, 20.
[20] *See McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) ("Clearly, an allegation of an unjustified serious physical assault against an inmate raises an arguable section 1983 claim. On the other hand, as a rule, mere threatening language and gestures of a custodial office do not, even if true, amount to constitutional violations." (citation modified)); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) ("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983."); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (explaining that a prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when the official uses excessive physical force against prisoners).
[21] R. Doc. 70-1 at 5.

4

in the dismissal of all of his claims that are based on threats made to Plaintiff, including not only the portions of his § 1983 claim based on verbal threats but also his state-law assault claim. As Plaintiff also recognized in his objections,[22] however, the Magistrate Judge Report and Recommendation did not address Plaintiff's state-law assault claim.[23] Accordingly, only the § 1983 claim is the subject of the Magistrate Judge's recommended disposition. Plaintiff's argument regarding his state-law assault claim is thus moot. The § 1983 claim against Defendants Rester, Mizell, Jones and O'Keefe based on the verbal threats will be dismissed. Plaintiff's state-law assault claim, which is brought against Defendants Rester and Mizell,[24] remains pending.

### B. Objections related to recommendation that the Court dismiss Plaintiff's § 1983 claim against Defendant McMurray.

#### 1. Plaintiff's Objection

In addition to the verbal threats by Defendants Rester, Mizell, Jones and O'Keefe and the physical beating by Defendants Rester and Mizell, Plaintiff also alleges that Defendant McMurray violated his Eighth Amendment right to be free from cruel and unusual punishment when Defendant McMurray forcefully pushed Plaintiff while escorting him to the infirmary, causing Plaintiff to trip and fall to the ground. The Magistrate Judge found that Plaintiff did not set forth sufficient allegations to support a constitutional violation claim under § 1983 against Defendant McMurray and thus recommended the dismissal of this claim. The Magistrate Judge appears to have considered Plaintiff's claim against Defendant McMurry as an excessive force claim and as a deliberate indifference claim. Plaintiff objects to the Magistrate Judge's finding that he did not sufficiently allege a plausible excessive force claim against Defendant McMurray.

---

[22] R. Doc. 70-1 at 6.
[23] *See* R. Doc. 65.
[24] *See* R. Doc. 39 at ¶ 42.

To survive, a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state "a claim to relief that is plausible on its face."[25] A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[26] The Court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff.[27]

Here, Plaintiff alleges that he was brought into an un-monitored employee breakroom inside the Rain Unit of Rayburn and was physically attacked by Defendants Rester and Mizell.[28] After Plaintiff fell to the ground from the continuous beating, Plaintiff was placed in handcuffs and shackles.[29] Even after Plaintiff was restrained, Defendants Rester and Mizell continued to punch and kick Plaintiff and also slammed his face into the ground, causing his teeth to break.[30] Defendant Rester then called on his radio for all units to head towards the breakroom inside of the Rain Unit, and Defendant McMurray was the first to arrive.[31] According to Plaintiff's complaint,

> Defendant McMurray grabbed Plaintiff from the floor and onto his feet and forcefully walked Plaintiff out of Rain Unit and towards the infirmary. Plaintiff pleaded for Defendant McMurray to understand that he was not resisting, but needed him to slow down as Plaintiff could not keep up with the pace while being shackled. Defendant McMurray refused to slow down and forcefully pushed Plaintiff's body forwards, causing Plaintiff to trip and fall in the hallway leading to the infirmary.[32]

Plaintiff alleges that, as a result of the above-mentioned uses of force, "he suffered serious injuries, including, without limitation, broken teeth and damage to his ankles, legs, jaw, face, and neck."[33]

---

[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).
[26] *Id.* at 678.
[27] *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).
[28] R. Doc. 39 at ¶¶ 11–17.
[29] *Id.* at ¶ 16.
[30] *Id.* at ¶¶ 16–17.
[31] *Id.* at ¶ 17.
[32] *Id.*
[33] *Id.* at ¶ 20.

An excessive force claim requires (1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.[34] In evaluating an excessive force claim, the core judicial inquiry focuses on the "nature of the force—specifically, whether it was nontrivial and applied maliciously and sadistically to cause harm."[35] That said, not "every malevolent touch by a prison guard gives rise to a federal cause of action."[36] "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimus* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."[37]

Although a plaintiff need not plead a "significant injury" as a threshold requirement for stating an excessive force claim, the extent of the injury suffered by the plaintiff may still be relevant to the Eighth Amendment inquiry because it "may provide some indication as to the amount of force applied."[38] Such is the case here, where Plaintiff attempts to bring an excessive force claim against Defendant McMurray based on Defendant McMurray "forcefully push[ing] Plaintiff's body forward, causing Plaintiff to trip and fall in the hallway leading to the infirmary."[39] As the Supreme Court has explained, "[a]n inmate who complains of a 'push of shove' that causes no discernable injury almost certainly fails to state a valid excessive force claim."[40] Thus, the extent of Plaintiff's injury caused by Defendant McMurray's forceful push is highly relevant to the Court's inquiry into whether Plaintiff has stated a valid excessive force claim against Defendant McMurray. Upon review of the allegations in the operative complaint, however, Plaintiff does not specify which, if any, of his alleged injuries were caused by Defendant

---

[34] *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007).
[35] *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010).
[36] *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).
[37] *Id.* at 9–10 (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).
[38] *Wilkins*, 559 U.S. at 37.
[39] R. Doc. 39 at ¶ 17.
[40] *Wilkins*, 559 U.S. at 38 (citing *Hudson*, 503 U.S. at 9).

7

McMurray's push as opposed to the punching, kicking, and head slamming by Defendants Rester and Mizell.[41] Without any information regarding the extent of injury Plaintiff suffered at the hands of Defendant McMurray, the Court is unable to find that Plaintiff has alleged more than a malevolent, *de minimus* use of force by Defendant McMurray. Such force is not protected by the Eighth Amendment. Accordingly, Plaintiff's § 1983 claim against Defendant McMurray must be dismissed for failure to state a claim.

### 2. Defendants' Objection

Defendants do not object to the Magistrate Judge's finding that Plaintiff failed to allege a plausible § 1983 excessive force claim against Defendant McMurray. Instead, Defendants argue that although the Magistrate Judge's Report and Recommendation was silent as to Plaintiff's state-law battery claim against Defendant McMurray, the Court should modify the recommended disposition and also dismiss the state-law battery claim against Defendant McMurray because Defendants raised the defense of qualified immunity as to all of Plaintiff's claims, including the state-law claims, and because the Magistrate Judge's findings related to Plaintiff's failure to allege a plausible § 1983 claim against Defendant McMurray are enough to sustain the dismissal of the state-law battery claim as well.

Conducting a *de novo* review of this issue, the Court determines that Defendants did not adequately brief the applicability of qualified immunity to any of Plaintiff's state-law claims, much less the specific battery claim against Defendant McMurray. The Court acknowledges that Defendants' memorandum in support of their motion to dismiss does state "Plaintiff's claims should be dismissed pursuant to Qualified Immunity" and that "Defendants assert this affirmative defense to all of Plaintiff's claims including Plaintiff's Constitutional claims asserted under the

---

[41] *See* R. Doc. 39 at ¶ 20 ("As a consequence to the incident on August 14, 2023, Plaintiff alleges he suffered serious injuries, including, without limitation, broken teeth and damage to his ankles, legs, jaw, face, and neck.").

8

Eight Amendment and Plaintiff's state law claims."[42] Defendants' actual briefing on the issue of qualified immunity, however, relates only to qualified immunity under federal law with respect to Plaintiff's claims that his Eighth Amendment rights were violated.[43] Federal qualified immunity does not apply to state-law claims, and Defendants provided no argument or reference to legal authority on the issue of whether they are entitled to qualified immunity as a matter of Louisiana law.[44] Moreover, Defendants' additional argument raised in their objection—that Plaintiff's state-law battery claim must fail if there is no viable excessive force claim under § 1983—was not raised in Defendants' briefing on the motion to dismiss. It is not incumbent on the Court to make legal arguments for the parties or to address issues that have not been properly briefed.[45] Because Defendants failed to adequately brief these issues in the memorandum in support of their motion to dismiss, the state-law battery claim against Defendant McMurray is not subject to dismissal at this time.

**C. Objections related to recommendation that the Court dismiss Plaintiff's state-law claims for intentional infliction of emotional distress.**

Next, the Magistrate Judge recommended that the Court dismiss Plaintiff's state-law claims for intentional infliction of emotional distress ("IIED") against Defendants Rester, Mizell, Jones, and O'Keefe, on the basis that Plaintiff's allegations of verbal threats are insufficient to state a

---

[42] R. Doc. 43-1 at 10.
[43] R. Doc. 43-1 at 10–17.
[44] *See Brown v. Miller*, 519 F.3d 231, 239 (5th Cir. 2008) (explaining that "[i]n evaluating a motion to dismiss a state claim on the grounds of qualified immunity, federal courts must apply the state's substantive law of qualified immunity" and declining to address a defendant's argument that the state-law claims against him should have been dismissed on the basis of qualified immunity under Louisiana law when he only argued the federal law of qualified immunity in his briefing).
[45] *State Farm Life Ins. Co. v. Bryant*, No. 3:18-CV-1628-L, 2020 WL 2812866, at *6 (N.D. Tex. May 30, 2020); *see also* Local Civil Rule 7.4 ("All contested motions must be accompanied by separate memoranda which must contain a concise statement of reasons supporting the motion and citations of authorities.").

plausible IIED claim under Louisiana law. Plaintiff objects to the Magistrate Judge's finding that he did not sufficiently allege an IIED claim.

To state a plausible IIED claim under Louisiana law, Plaintiff must allege facts that, when accepted as true, establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."[46]

In the section of Plaintiff's complaint in which Plaintiff specifically discusses his IIED claims against Defendants Rester, Mizell, Jones, and O'Keefe, Plaintiff alleges:

> Leading up to the brutal attack on Plaintiff by Defendants Acting Lts. Rester and Mizell, Plaintiff was subjected to on-going threats of violence. Defendants Acting Lts. Rester and Mizell, Lt. Jones, Sgt. O'Keefe, and John Does 1-2 threatened Plaintiff over the course of several weeks. The threats were not only threats of violence, but threats of great bodily harm. The aforementioned Defendants all intended to inflict severe emotional distress on Plaintiff that no reasonable member of society could tolerate, especially in Plaintiff's environment where death could happen at any moment. Plaintiff was severely distressed from these threats, so much so that he reported it several times to outside members of society and to Schaubhut.[47]

Elsewhere in the complaint, Plaintiff describes these alleged threats with more particularity. The threats purportedly began with Defendant Rester, who Plaintiff alleges summoned Plaintiff into the Captain's office and asked Plaintiff if he liked his teeth.[48] After Plaintiff responded that he did like his teeth, Defendant Rester asked Plaintiff if he would want to give Defendant Rester any reason to take Plaintiff's teeth from him.[49] When Plaintiff responded that he did not, Defendant Rester "told Plaintiff that he would put Plaintiff into the hospital if he

---

[46] *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).
[47] R. Doc. 39 at ¶ 47.
[48] R. Doc. 39 at ¶ 5.
[49] *Id.*

10

saw Plaintiff at the 'key' (the certain area of a prison unit/dorm where correctional officers sit), again, talking to [Schaubhut]," another correctional officer at Rayburn.[50]

Plaintiff further alleges that due to the jealousy of Defendants Rester and Mizell concerning Plaintiff's conversations with Schaubhut, Defendants Rester and Mizell sent other correctional officers to threaten Plaintiff as well.[51] On one occasion, Defendant Jones approached Plaintiff and asked him whether "he was the one going to the 'key' and talking to that 'girl.'"[52] After Plaintiff responded that it was him, Plaintiff alleges Defendant Jones "aggressively responded that [Plaintiff] better stay away from the 'key' or they were going to 'f*ck [Plaintiff] up.'"[53] On another occasion, Defendant Jones threatened Plaintiff "by telling Plaintiff that he was going to suffer severe physical consequences if he did not listen to them and stop coming up to the 'key' to talk to [Schaubhut]."[54] Then, on the date of the attack, Plaintiff alleges that after he was brought into the unmonitored breakroom (but before the physical attack began), Defendant Mizell began questioning Plaintiff about whether he liked his teeth, and Defendant Rester asked Plaintiff whether he remembered what he told Plaintiff would happen if he caught Plaintiff talking to Schaubhut again.[55] Plaintiff further alleges that before he could respond to Defendants Rester and Mizell, they began their physical attack, which included beating, striking, and kicking Plaintiff, restraining Plaintiff after he fell to the ground, continuing to beat him after he was restrained, and slamming Plaintiff's face into the concrete floor, causing Plaintiff's teeth to break.[56]

---

[50] *Id.*
[51] *Id.* at ¶¶ 8–9.
[52] *Id.* at ¶ 9.
[53] *Id.*
[54] *Id.*
[55] *Id.* at ¶ 13.
[56] *Id.* at ¶¶ 13–17.

11

Plaintiff alleges Defendants Rester, Mizell, Jones, and O'Keefe are liable to him for IIED, given the outrageous conduct towards Plaintiff, over a span of several weeks, by these Defendants who were in a position of power over Plaintiff.[57]

Defendants moved to dismiss Plaintiff's IIED claims against them on the basis that Plaintiff's allegations are insufficient to support a finding that any of the defendants engaged in conduct that would be considered "extreme" and "outrageous" or that the distress suffered by Plaintiff meets the level of severity necessary to state a plausible IIED claim.

With respect to Defendants' first argument, the Louisiana Supreme Court has explained that to satisfy the first element of an IIED claim "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[58] "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind."[59]

Having conducted a de novo review of the issue, the Court concludes Plaintiff has not alleged facts sufficient to satisfy the first element of an IIED claim with respect to Defendants Jones and O'Keefe. While the Court in no way endorses such conduct, the singular threats by each of these defendants does not rise to the level of extreme and outrageous conduct necessary to state a plausible IIED claim. The Court cannot say the same, however, with respect to the allegations pertaining to Defendants Rester and Mizell, who not only threatened or insinuated that they would physically harm Plaintiff by breaking his teeth for talking to another correctional officer, but who

---

[57] *Id.* at ¶ 50.
[58] *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).
[59] *Id.*

actually followed through on their threats. This conduct, which the Court must accept as true at this stage, by correctional officers who were in a position of authority over Plaintiff, certainly goes beyond all possible bounds of decency and is atrocious and utterly intolerable in a civilized community. Plaintiff has therefore plausibly alleged extreme and outrageous conduct by Defendants Rester and Mizell.

Despite satisfying the first element, Plaintiff's IIED claims against Defendants Rester and Mizell are nevertheless subject to dismissal for the reasons raised in Defendants' second argument—that is, Plaintiff has not alleged facts that, if true, would meet the high threshold for severe emotional distress under Louisiana law. As the Louisiana Supreme Court has explained, "[t]he distress suffered must be such that no reasonable person could be expected to endure it. Liability arises only where the mental suffering or anguish is extreme."[60] In *Smith v. Amedisys Inc.*, the Fifth Circuit, applying Louisiana law, found that the impact of persistent verbal and physical sexual harassment on the plaintiff—who testified that, as a result of the conduct, she felt angry, embarrassed, disgusted, humiliated, horrified, repulsed, belittled, incompetent, horrible, very offended, devastated, mad, and very depressed; and who suffered from and sought treatment for depression, headaches, and a loss of appetite—was insufficient to meet the high threshold for severity.[61] Here, Plaintiff alleges only that he was "severely distressed from [Defendants'] threats, so much so that he reported it several times to outside members of society and to Schaubhut."[62] This allegation regarding the severity of Plaintiff's distress is conclusory.[63] To state a facially plausible IIED claim, Plaintiff must allege facts that, if true, would plausibly suggest Plaintiff's

---

[60] *Id.* at 1210.
[61] *Smith v. Amedisys Inc.*, 298 F.3d 434, 450 (5th Cir. 2002).
[62] R. Doc. 39 at ¶ 17.
[63] *See Ashcroft v. Iqbal*, 556 U.S. 662, 680–681 (2009) (explaining that bare assertions, amounting to nothing more than a formulaic recitation of the elements of the claim, are conclusory and not entitled to the assumption of truth).

13

emotional distress was so severe that no reasonable person could be expected to endure it. Plaintiff's conclusory allegation is insufficient to carry his burden.[64]

Accordingly, Plaintiff's IIED claims against Defendants Jones, O'Keefe, Rester, and Mizell are subject to dismissal for the respective reasons set forth herein.

**D. Request for leave to amend.**

Though Plaintiff objects to the recommended dismissal of his claims, he alternatively argues that, in the event the Court does find deficiencies in his complaint, dismissal with prejudice is improper, and he must be given leave to amend his complaint. Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave when justice so requires." According to the Fifth Circuit, "district courts must entertain a presumption in favor granting parties leave to amend."[65] This presumption can be overcome, however, if the Court finds undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment.[66]

Here, the Court has determined, for the reasons stated above, that the following claims are subject to dismissal: (1) Plaintiff's § 1983 claims against Defendants Rester, Mizell, Jones and O'Keefe based on the verbal threats; (2) Plaintiff's § 1983 claim against Defendant McMurray; and (3) Plaintiff's IIED claims against Defendants Jones, O'Keefe, Rester, and Mizell. With respect to Plaintiff's § 1983 claims against Defendants Rester, Mizell, Jones and O'Keefe based on the verbal threats as well as Plaintiff's IIED claims against Defendants Jones and O'Keefe, the Court finds these claims should be dismissed with prejudice, without leave to amend, because any

---

[64] *See id.* at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").
[65] *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004).
[66] *See id.*; *Foman v. Davis*, 371 U.S. 178, 182 (1962).

amendment would be futile as to these claims.[67] As to Plaintiff's § 1983 claim against Defendant McMurray and Plaintiff's IIED claims against Defendants Rester and Mizell, however, the Court finds these claims should be dismissed without prejudice, with leave to amend, to the extent the Plaintiff can allege facts sufficient to cure the above-identified deficiencies. There are no circumstances present that would justify denying leave to amend, with respect to these specific claims, at this time.

### E. Unobjected-to Recommendations

There were no objections to the Magistrate Judge's recommendations to: (1) deny Defendants' motion to strike the affidavit attached to Plaintiff's operative complaint pursuant to Federal Rules of Civil Procedure 12(f) and 10(c); (2) deny Defendants' motion to strike impertinent and scandalous claims contained in Plaintiff's oppositions pursuant to Federal Rule of Civil Procedure 12(f); and (3) deny Defendants' Rule 12(b)(6) motion to dismiss with respect to Plaintiff's § 1983 claims against Defendants Rester and Mizell for use of excessive force. When no objection is filed, the Court need not conduct a de novo review; rather, the Court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.[68] Having reviewed the unobjected-to portions of the Magistrate Judge's Report and Recommendations, the Court concludes the recommendations are not clearly erroneous or contrary to law. Accordingly, the Court accepts the Magistrate Judge's recommendations to deny

---

[67] As set forth above, verbal threats alone do not amount to a constitutional violation; thus, there is no additional set of facts Plaintiff could allege that would state a facially plausible § 1983 claim for a violation of the Eighth Amendment based on verbal threats. Additionally, mere threats do not constitute the type of extreme and outrageous conduct necessary to state a plausible IIED claim. Thus, in this case, where Plaintiff has not indicated the existence of any additional conduct by Defendants Jones and O'Keefe, any amendment would be futile as to the IIED claims against them.

[68] *See United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989); *see also* FED. R. CIV. P. 72(b) advisory committee's note to 1983 addition.

Defendants' motions to strike and to deny Defendants' motion to dismiss with respect to Plaintiff's § 1983 claims against Defendants Rester and Mizell for use of excessive force.

### III. CONCLUSION

For all the foregoing reasons,

**IT IS ORDERED** that Defendants' motion to strike the affidavit attached to Plaintiff's operative complaint pursuant to Federal Rules of Civil Procedure 12(f) and 10(c) (R. Doc. 44) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion to strike impertinent and scandalous claims contained in Plaintiff's oppositions pursuant to Federal Rule of Civil Procedure 12(f) (R. Doc. 56) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) (R. Doc. 43) is **GRANTED IN PART AND DENIED IN PART**, as set forth herein. Accordingly, **IT IS FURTHER ORDERED** that:

- Plaintiff's § 1983 claims against Defendants Rester, Mizell, Jones and O'Keefe based on the verbal threats are **DISMISSED WITH PREJUDICE**, without leave to amend;

- Plaintiff's IIED claims against Defendants Jones and O'Keefe are **DISMISSED WITH PREJUDICE,** without leave to amend;

- Plaintiff's § 1983 claim against Defendant McMurray is **DISMISSED WITHOUT PREJUDICE**, with leave to amend, to the extent Plaintiff can cure the deficiencies identified herein; and

- Plaintiff's IIED claims against Defendants Rester and Mizell are **DISMISSED WITHOUT PREJUDICE**, with leave to amend, to the extent Plaintiff can cure the deficiencies identified herein.

- The claims not subject to dismissal at this time are: (1) Plaintiff's § 1983 claims against Defendants Rester and Mizell for use of excessive force; (2) Plaintiff's state-law battery claims against Defendants Rester, Mizell, and McMurray; and (3) Plaintiff's state-law assault claims against Defendants Rester and Mizell.

**IT IS FURTHER ORDERED** that Plaintiff's second amended complaint is due by **Monday, March 16, 2026**. Failure to file by this deadline may result in dismissal with prejudice of the claims presently dismissed without prejudice.

**IT IS FURTHER ORDERED** that because this Order and Reasons dismisses all claims against Defendants Jones and O'Keefe with prejudice, the Clerk of Court shall terminate these defendants on the Court's docket.

New Orleans, Louisiana, this 23rd day of February 2026.

_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

17